UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAURA L. SIBLEY,

                Plaintiff,             7:12-cv-799
                                                    (GLS)

         v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Conboy, McKay Law Firm | LAWRENCE D. HASSELER, |
| 307 State Street | ESQ. |
| Carthage, NY 13619 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | SERGEI ADEN |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

                              **MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff Laura L. Sibley challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI),[1] seeking judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Sibley's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On October 21, 2009, Sibley filed an application for SSI under the Social Security Act ("the Act"), alleging disability since April 25, 1998. (*See* Tr.[2] at 33, 120-23.) After her application was denied, (*see id.* at 34-37), Sibley requested a hearing before an Administrative Law Judge (ALJ), which was held on August 1, 2011, (*see id.* at 27-32, 38-39). Sibley failed to appear at the hearing, however, and the ALJ issued a notice to show cause for failure to appear. (*See id.* at 99-104.) Finding no good cause for

---

[1] Because no application for Disability Insurance Benefits (DIB) appears in the record and it is otherwise clear that Sibley's request for review pertains only to her application for SSI, the court ignores the mistaken reference to DIB in her complaint. (*See* Compl. ¶ 2, Dkt. No. 1.)

[2] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 7.)

2

Sibley's failure to appear at the hearing, the ALJ issued a decision on the record exclusive of hearing testimony, which denied the requested benefits. (*See id.* at 12-26.) That unfavorable decision became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-7.)

Sibley commenced the present action by filing her Complaint on May 15, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 6, 7.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 9, 11.)

### III.  Contentions

Sibley contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 9 at 3-8.) Specifically, Sibley claims that the ALJ erred in failing to: (1) find that she suffered from a listing-level intellectual deficit; and (2) properly develop the record. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (*See* Dkt. No. 11 at 11-17.)

### IV.  Facts

3

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 9 at 1-3; Dkt. No. 11 at 1-8.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Listing 12.05(C)

According to Sibley, the ALJ erred in determining that she did not meet listing 12.05(C) because she possessed "adequate adaptive functioning." (Dkt. No. 9 at 3-7.) Sibley argues that consideration of a claimant's adaptive functioning is not required under the listing. (*See id.* at 6-7.) The Commissioner counters, and the court agrees, that the ALJ

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

properly considered Sibley's adaptive functioning and her listing determination is also supported by substantial evidence. (*See* Dkt. No. 11 at 11-15.)

At the third step of the disability evaluation, the ALJ is required to determine whether the claimant's impairment(s) meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *See* 20 C.F.R. § 416.920(d). To establish disability under section 12.05, which pertains to mental retardation, Sibley had to first make a threshold showing that she possessed "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" prior to age twenty-two. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05; *see id.* § 12.00(A) (explaining that, to meet the listing, a claimant's impairment must satisfy the diagnostic description in the introductory paragraph, and any one of the four sets of criteria). "[D]eficits in adaptive functioning 'denotes an inability to cope with the challenges of ordinary everyday life.'" *Carrube v. Astrue*, No. 3:08-CV-0830, 2009 WL 6527504, at *4 (N.D.N.Y. Dec. 2, 2009) (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007)); *see also Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012). This includes consideration of a "claimant's effectiveness in areas

such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007).  To satisfy listing 12.05(C), Sibley was required to further demonstrate that she suffers from "[a] valid verbal, performance, or full scale IQ of [sixty] through [seventy] and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C).

Here, as the ALJ acknowledged, Sibley had a full scale IQ score of sixty one.  (*See* Tr. at 18, 235.)  However, the ALJ concluded that Sibley did not meet listing 12.05(C) because "she does not have the requisite deficits in adaptive functioning."  (*Id.* at 18.)  In making this determination the ALJ relied on the opinion of medical consultant Daniel Malone, whose opinion she afforded great weight.  (*See id.* at 18-19, 292.)  The ALJ found that Sibley has "good communication, self-care, home living, work, social and leisure, health, and safety skills."  (*Id.* at 19.)  Specifically, the record indicates that Sibley, who lives with her boyfriend, regularly cleans her home, does laundry, babysits children, plays video games, uses Facebook, bowls, and watches television.  (*See id.* at 138, 141, 205, 219-20, 222, 261.)  Further, Sibley is able to care for her personal hygiene, prepare and

cook meals some of the time, and take public transportation. (*See id.* at 138-39, 231.) The ALJ also noted that, in the past, Sibley obtained competitive employment. (*See id.* at 19, 156-60, 223.)

In addition to the above evidence highlighted by the ALJ, on an admission form for Credo Community Center it was reported that Sibley did not have significant deficits in functioning skills, which included activities of daily living and interpersonal skills. (*See id.* at 195, 197.) Further, medical consultant T. Harding opined that Sibley "is able to perform at least basic adult functional/adaptive tasks on an independent basis." (*Id.* at 290.) Finally, consultative examiner Jeanne Shapiro concluded that, among other things, Sibley is "capable of understanding and following simple instructions and directions[,] performing simple tasks with supervision and independently[,] maintaining attention and concentration for tasks[,] regularly attend[ing] to a routine and maintain[ing] a schedule[,] learning some new tasks[, and] relat[ing] to and interact[ing] moderately well with others." (*Id.* at 237-38.)

In sum, the ALJ properly considered listing 12.05(C) and her determination is supported by substantial evidence. *See Talavera*, 697 F.3d at 153 ("[T]he regulations recognize that persons with an IQ in the 60s

(or even lower) may still be able to hold a full-time job, and are therefore not disabled, if their adaptive functioning is sufficiently intact." (internal quotation marks and citation omitted)).

## B.   Consultative Examination

Sibley also argues that the ALJ erred in failing to obtaining a consultative physical examination. (*See* Dkt. No. 9 at 7-8.) Specifically, Sibley claims that, because she complained of a right hand impairment, which limited her ability to "make a fist all the way" and move her middle finger "normally," the ALJ should have ordered a consultative examination. (*Id.*) On the other hand, the Commissioner argues that the ALJ properly determined that Sibley's right hand impairment was not medically determinable. (*See* Dkt. No. 11 at 15-17.) Again, the court agrees with the Commissioner.

While the ALJ has an affirmative obligation to develop the administrative record, her duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010); *see also* 20 C.F.R. § 416.912(d) (stating that generally, a complete record contains a "medical history for at least the [twelve] months preceding the month in which" the claimant files her application).  Indeed, if

all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make her determination based upon that evidence. *See* 20 C.F.R. § 416.920b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Moreover, the ALJ is afforded discretion in determining whether a consultative exam is warranted. *See* 20 C.F.R. § 416.919a. As with development of the record generally, "[a] consultative examination is unnecessary if the record contains sufficient information on which to base the decision." *Hall ex rel. M.M. v. Astrue*, No. 11-CV-6317T, 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012).

In this case, the ALJ explained that "[t]here is no medical evidence suggesting that [Sibley] has a medically determinable impairment involving her right hand," and, thus, she concluded that it was not a severe impairment. (Tr. at 18.) This conclusion is supported by substantial evidence. Notwithstanding Sibley's arguments to the contrary, which rely on her subjective complaints, (*see* Dkt. No. 9 at 7-8), there is no evidence that the physical impairment she complains of here "significantly" inhibited

9

her ability to do basic work activities, 20 C.F.R. § 416.920(c). In fact, the medical record contains no clinical or diagnostic evidence of a right hand impairment. (*See* Tr. at 195, 206, 216, 218, 225, 258, 260.) Notably, to be severe, an impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 416.908, and not merely subjective complaints, *see id.* § 416.928(a). In addition to the lack of clinical evidence, throughout the record, when asked about her physical health, Sibley failed to report any ongoing impairment to her right hand. (*See id.* at 206, 216, 218, 225, 258, 260.)[4] Finally, despite her alleged impairment, Sibley reported that she cleaned her home, did laundry, played video games, used the computer, and participated in a bowling league. (*See id.* at 138, 140-41, 205, 219-20, 222.) Based on this evidence, which contains no obvious gaps or inconsistencies, the court concludes that the ALJ's development of the record was sufficient to render a disability determination. *See Rosa*, 168 F.3d at 79 n.5.

---

[4] In July 2009, Sibley reported that she had undergone surgery on her right hand in 2004 due to broken tendons. (*See* Tr. at 216.) However, she further reported that she did not have any major physical health conditions, was not under the care of a doctor, and was not taking medication related to her hand impairment. (*See id.*)

10

Furthermore, substantial evidence supports the ALJ's determination that the impairment involving Sibley's right hand, assuming there was one, was not severe. (*See* Tr. at 18.)

## C. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Sibley's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 18, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court